638 S.E.2d 757 (2006)
In the Interest of J.V., a child.
No. A06A1045.
Court of Appeals of Georgia.
October 12, 2006.
Reconsideration Denied November 8, 2006.
*758 Meron Dagnew, Bentley C. Adams, Office of Public Defender for Conasauga Circuit, Dalton, for appellant.
Kermit N. McManus, District Attorney, Matthew A. Rankin, Assistant District Attorney, for appellee.
RUFFIN, Chief Judge.
After J.V., a minor, confessed to aggravated assault, the juvenile court issued an order committing him to the custody of the Department of Juvenile Justice (the "Department") and confining him to a youth development center for five years. The trial court denied J.V.'s subsequent motion to commute or reduce his sentence, finding that Georgia law prohibits the modification of an order of commitment of a child once physical custody of the child has been transferred to the Department. For reasons that follow, we affirm.
OCGA § 15-11-63 sets forth designated felony acts for which a child may be placed in restrictive custody.[1] Aggravated assault is one such designated felony act.[2] In determining whether to place the child in restrictive custody, the juvenile court considers several factors, including the best interests of the child and the nature of the offense.[3] If the juvenile court orders restrictive custody, "[t]he child shall be placed in the custody of the Department of Juvenile Justice for an initial period of five years" and "shall initially be confined in a youth development center for a period set by the order, to be not less than 12 or more than 60 months."[4] The child may not be released from a youth development center or transferred to a less restrictive facility during this period, "unless by court order."[5] And "[t]he child shall not be discharged from the custody of the Department of Juvenile Justice unless a motion therefor is granted by the court, which motion shall not be made prior to the expiration of one year of custody."[6] The language of OCGA § 15-11-63 thus suggests both that the juvenile court could order a child's early release from a youth development center to a less restrictive form of custody and that a child or the Department could move for early discharge from custody.
This language, at first glance, appears to conflict with that of OCGA § 15-11-40(b), which sets forth the grounds for modification or vacation of juvenile court orders and provides that an
order of the court may also be changed, modified, or vacated on the ground that changed circumstances so require in the best interest of the child, except an order committing a delinquent child to the Department of Juvenile Justice, after the child has been transferred to the physical custody of the Department of Juvenile Justice.
Applying this statute, we have previously held that an order committing a child to the custody of the Department for a designated felony act could not be modified to change *759 the terms of confinement once the Department has taken physical custody of the child.[7]
In this case, the juvenile court issued an order in which it found that J.V. had committed a designated felony act and was in need of restrictive custody. The juvenile court committed J.V. to the custody of the Department for five years and ordered him "confined in a youth development center for five years. Otherwise, he may not be released from a youth development center or transferred to a non-secure facility during the five year period nor released from intensive supervision except by court order." Nearly three years later, J.V. moved to have his sentence commuted or reduced. The juvenile court denied his motion, relying on OCGA § 15-11-40's prohibition of modification of an order of commitment once physical custody is transferred to the Department.[8]
On appeal, J.V. argues that if OCGA § 15-11-40(b) prohibits modification of an order that includes commitment to the Department, then OCGA § 15-11-63(e)(1)(D) and (e)(2)(C) are rendered "completely purposeless." We do not agree.
The rules of statutory construction require that we follow the words of a statute literally
unless the result is an absurdity, contradiction, or such an inconvenience that it is clear that the legislature must have intended something else. We must seek to effectuate the intent of the legislature, OCGA § 1-3-1(a), and to give each part of the statute meaning and avoid constructions that make some language mere surplusage. All parts of a statute should be harmonized and given sensible and intelligent effect, because it is not presumed that the legislature intended to enact meaningless language.[9]
We construe statutes relating to the same subject matter together, and harmonize them "wherever possible, so as to ascertain the legislative intendment and give effect thereto."[10]
Applying these principles, we conclude that OCGA §§ 15-11-40(b) and 15-11-63 may be harmonized using the plain language of both statutes. OCGA § 15-11-40(b) prohibits the change, modification, or vacation of a commitment order once a child is in the custody of the Department "on the ground that changed circumstances so require in the best interest of the child." But it does not prohibit the change, modification, or vacation of a commitment order on other grounds. Under the provisions of OCGA § 15-11-63(e)(1)(D) and (e)(2)(C), a juvenile court may order a child "released from a youth development center or transferred to a nonsecure facility" during the period of restrictive custody set out in the initial order or may discharge a child from the Department's custody upon a motion after a year of custody. Reading the statutes together, such an order could be made on a ground other than "that changed circumstances so require in the best interest of the child."[11]
In his motion to commute or reduce his sentence, J.V. argued that he has been rehabilitated *760 while in restrictive custody and would benefit from being released. This is clearly an argument "that changed circumstances so require in the best interest of the child," and the trial court was not authorized to modify its order on this basis.[12] We therefore affirm the juvenile court's denial of J.V.'s motion to commute or reduce his sentence.
Judgment affirmed.
SMITH, P.J., and PHIPPS, J., concur.
NOTES
[1] See OCGA § 15-11-63(a)(2), (b).
[2] See OCGA § 15-11-63(a)(2)(B)(ii).
[3] See OCGA § 15-11-63(c).
[4] OCGA § 15-11-63(e)(1)(A), (B).
[5] OCGA § 15-11-63(e)(1)(D).
[6] OCGA § 15-11-63(e)(2)(C).
[7] See In the Interest of S.S., 276 Ga.App. 666, 667, 624 S.E.2d 251 (2005) (juvenile court could not, amend its dispositional order to increase term of confinement in youth development center after child had been in custody of Department for a year); Dept. of Human Resources v. J.R.S., 161 Ga.App. 262, 263-264, 287 S.E.2d 713 (1982) (decided under previous Code section) ("the trial judge can neither terminate nor extend the disposition, and after the division has physical custody under the order he is also prevented from changing, modifying, or vacating the order on the ground that changed circumstances so require in the best interests of the child") (punctuation omitted); compare In the Interest of B.D.T., 219 Ga.App. 804, 804-805, 466 S.E.2d 680 (1996) (juvenile court could modify its order of commitment when child had not yet been transferred to physical custody of Department). We note that none of these cases addressed the provisions of OCGA § 15-11-63.
[8] The juvenile court did not address the substance of the motion.
[9] Effingham County Bd. of Tax Assessors v. Samwilka, Inc., 278 Ga.App. 521, 522, 629 S.E.2d 501 (2006).
[10] Johnson v. Ford Motor Co., 281 Ga.App. 166, 169, 637 S.E.2d 202, (2006); see State v. Nix, 220 Ga.App. 651, 652(1), 469 S.E.2d 497 (1996). All of the Code sections at issue here were adopted in the same act during the 1992 session of the Georgia General Assembly. See Ga. L.1992, p. 1983, §§ 11, 15.
[11] OCGA § 15-11-40(b).
[12] Id.; see J.R.S., supra.